Sherman HOPKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–86–00582–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 21, 1987.

Robert Lord, Houston, for appellant.

John B. Holmes, Jr., Roe Morris, Joan Huffman, Houston, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

WILLIAM E. JUNELL, Justice.

Sherman Hopkins appeals a conviction for the misdemeanor offense of unlawfully carrying a handgun. The court found appellant guilty and assessed punishment at a fine of $101.00.

Appellant brings a single point of error in which he contends the evidence is insufficient to support the trial court's verdict and conviction. We affirm.

John Woods, Jr., testified that on September 4, 1985, he exited Interstate Highway 45 and drove down Sampson enroute to his home in southeast Houston. Woods saw a white truck, driven by appellant, run a stop sign and run over Woods' dog. Woods estimated the truck was travelling at approximately 35 m.p.h.; the posted speed is 20 m.p.h. Following the truck, Woods saw it stop in front of a house and appellant get out to make a delivery of things from the back of the truck.

Woods approached appellant and asked for his driver's license and the name of his company since appellant had run a stop sign and run over Woods' dog. Appellant refused to give the information and said, "If you do follow me, I have something for your ass." Appellant then drove to Highway 288, followed by Woods, and stopped on the side of the road. Appellant got out of his truck and told Woods, "If you keep following me, I am going to put something on your ass." Assuming appellant was returning to his place of employment, Woods continued to follow appellant in order to report appellant's running the stop sign and hitting the dog.

Appellant drove to the Southwest Freeway and stopped in front of the Summit. He approached Woods' car and pointed a gun at Woods. Appellant said, "Dammit, if you keep on following me, I will blow your damned head off." Appellant continued south on the Southwest Freeway and exited on Bellaire Boulevard. Woods testified appellant made a U-turn in the driveway of a police station parking lot. Woods pulled into the driveway and stopped a passing police car. He told the officers that appel-lant had a gun in his truck. Appellant was taken inside the police station by the officers.

Jeffrey Hackett, Houston Police Department, testified that he and his partner were flagged down by Woods as they were coming into the police station parking lot. Hackett was told by Woods, "This man coming out of the driveway (referring to appellant) has a gun and you need to stop him." The officers stopped appellant's truck and saw a pistol lying on the front seat in plain view. Hackett testified he did not recall appellant claiming that he was taking the gun to his home or place of business. He did not recall appellant giving any explanation for transporting the gun. Hackett placed appellant in custody and took him to the police substation adjacent to the parking lot driveway where appellant was stopped.

Appellant's stepson, Floyd Wilkes, testified that he previously had spoken with appellant about the advisability of keeping the gun at home instead of work. Wilkes admitted that since he does not live in Houston, he did not know the location of his stepfather's gun at all times.

Appellant testified that for security purposes he had taken the gun to the warehouse where he was supervisor. He stated the gun had been at the warehouse for three or four months and he was taking it home on the day he was arrested. Appellant stated he had to stop to deliver paint on the way to his home in southeast Houston. He testified he told Woods to stop following him because he had a gun. Appellant denied pointing the gun at Woods or threatening to use the gun. He stated his usual route home would not take him to Bellaire Boulevard.

Appellant claimed the gun was not in plain view but was in his briefcase which was closed. He testified the officer opened the briefcase and said, "Yes, he have [sic] a gun."

Appellant stated he drove to the police station because Woods was following him. When asked why he was carrying a gun, appellant told the officer he had money in the briefcase and he was taking the gun home.

Appellant contends the evidence is insufficient to support the verdict and conviction; specifically he argues the trial court erred in finding that the route deviations made by appellant were neither necessary nor reasonable.[1]

A person commits the offense of unlawfully carrying a weapon if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club. Tex.Penal Code Ann. § 46.02(a) (Vernon 1974).

Section 46.03 of the Penal Code (Vernon Supp.1987) provides various defenses to the offense of unlawfully carrying a weapon. In addition to the defenses provided in § 46.03, there exist a number of judicially recognized defenses to the offense. *Inzer v. State*, 601 S.W.2d 367, 368 (Tex.Crim. App.1980). One of the case law defenses is that a party has a right to carry his pistol home, to his residence, or place of business under legitimate circumstances. *Inzer, supra* at 369, quoting *Rosebud v. State*, 87 Tex.Cr.R. 267, 220 S.W. 1093 (Tex.Crim. App.1920). The route taken must be a practical one, though not necessarily the shortest or most practical, and that journey must proceed without undue delay or unnecessary or unreasonable deviation. *Davis v. State*, 135 Tex.Crim. 659, 122 S.W. 2d 635 (Tex.Crim.App.1938); *Pettit v. State*, 627 S.W.2d 453 (Tex.App.—Houston [14th Dist.] 1981, no pet.).

The trial court found that the deviations from appellant's route home were neither necessary nor reasonable and, therefore, appellant was unlawfully carrying on and about his person a handgun. Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient to support the trial court's judgment. Therefore, the point of error is overruled and the judgment is affirmed.

---

1. The Court's findings of fact included:
3) The Defendant deviated from his route when he pulled off of the freeway and asked the witness, John Woods, Jr., to stop following and harassing him.

4) The Defendant again deviated from his route when he proceeded to the police substation to report that John Woods, Jr., was following and harassing him.